### HARRIS v. BROWN.

(Circuit Court of Appeals, Eighth Circuit. April 22, 1911.)

No. 3,405.

1. **TRIAL** (§ 46*)—EXCLUSION OF EVIDENCE—NECESSITY OF OFFER.

   If a question asked of a witness testifying on a trial is in proper form, and clearly admits of an answer relevant to the issues and favorable to the party on whose side the witness is called, its exclusion is error, although no statement is made of what is purposed to be proved; such a statement not having been required by the court.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 115–117; Dec. Dig. § 46.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WITNESSES (§ 58*)—COMPETENCY—HUSBAND AND WIFE—KANSAS STATUTE. Gen. St. Kan. 1909, § 5915 (Code Civ. Proc. § 321), which provides that husband and wife "shall be incompetent to testify for or against each other concerning any communication made by one to the other during the marriage, whether called while that relation subsisted or afterwards," construed liberally, as required by statute and in harmony with cognate provisions and the settled legislative policy of the state toward married women, makes husband and wife competent witnesses for or against each other in civil cases, except as to the communications specified; and under Rev. St. § 858, as amended by Act June 29, 1906, c. 3608, 34 Stat. 618 (U. S. Comp. St. Supp. 1909, p. 242), which provides that the competency of witnesses in civil actions in the federal courts "shall be determined by the laws of the state or territory in which the court is held," a wife is a competent witness for her husband in an action by him for alienation of her affections, brought in a federal court in Kansas.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 164; Dec. Dig. § 58.*

Competency in federal courts, following state practice, see notes to O'Connell v. Reed, 5 C. C. A. 602; Hinchman v. Parlin & Orendorff Co., 21 C. C. A. 278.]

In Error to the Circuit Court of the United States for the District of Kansas.

Action at law by Albert Harris against Thomas B. Brown. Judgment for defendant, and plaintiff brings error. Reversed.

L. W. Keplinger (C. W. Trickett, on the brief), for plaintiff in error.

Thomas J. White (James F. Getty, on the brief) for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

ADAMS, Circuit Judge. Is the wife a competent witness for her husband in a suit pending in the Circuit Court of the United States for the District of Kansas, brought by him against a third person to recover damages for the alienation of her affections? This is the only question in the case.

[1] It is first contended that the action of the trial court in holding her to be incompetent was not assignable for error, because there was no demonstration of the immateriality of the evidence sought to be elicited from her, by an offer to prove what counsel thought she would swear to. In urging this point, counsel have doubtless overlooked the final and controlling decision of this court on that subject. In Stanley v. Beckham, 82 C. C. A. 304, 153 Fed. 152, this court, speaking by Circuit Judge, now Circuit Justice, Van Devanter, said:

"But it is said there was no offer to show the substance of the testimony proposed to be elicited by the questions propounded and excluded in rebuttal, and therefore it does not appear that their exclusion was reversible error. The premise is correct, but not the conclusion. The controlling rule, applicable where the witness testifies in person at the trial, and not by deposition, as stated by Mr. Justice Harlan, in Buckstaff v. Russell, 151 U. S. 626, 637, 14 Sup. Ct. 448, 452, 38 L. Ed. 292, is this: 'If the question is in proper form,

and clearly admits of an answer relevant to the issues and favorable to the party on whose side the witness is called, it will be error to exclude it. Of course, the court, in its discretion, or on motion, may require the party, in whose behalf the question is put, to state the facts proposed to be proved by the answer; but, if that be not done, the rejection of the answer will be deemed error or not, according as the question upon its face, if proper in form, may or may not clearly admit of an answer favorable to the party in whose behalf it is propounded.' [Cases cited.] As it is plain that here the questions were in proper form, were relevant to the issues, and admitted of answers favorable to the party in whose behalf they were propounded, and as a statement of what was proposed to be proved was not required by the court, there was prejudicial error in not permitting the questions to be answered."

Accordingly, if we were dealing with the subject of *relevancy* or *materiality* of testimony, there would be no merit in defendant's contention, provided only the questions would have admitted of some answer relevant to the issues and favorable to the party propounding them. Much more is this true when objection is not made to the relevancy or materiality of any particular question, but to the competency of a witness to testify at all.

The act of June 29, 1906 (34 Stat. 618), provides that:

"The competency of a witness to testify in any civil action, suit, or proceeding in the courts of the United States shall be determined by the laws of the state or territory in which the court is held."

[2] The decision of the question involved in this case, therefore, turns on the true construction to be placed upon the laws of Kansas. The General Statutes 1909, § 5915 (Code Civ. Proc. § 321), in force at the time of the trial of this suit, enacts as follows:

"The following persons shall be incompetent to testify: * * * Third, husband and wife, for or against each other, concerning any communication made by one to the other during the marriage, whether called while that relation subsisted or afterwards."

This section is found in a statutory revision of the laws of the state which in express terms repealed all other acts of a general nature embodied or re-enacted in whole or in part in the revision. The rule of the common law was that husband and wife were incompetent witnesses for or against each other in any cause, civil or criminal.

Statutes of many of the states, however, had from time to time relaxed or modified this rule of the common law; and the state of Kansas is among them. Beginning with General Statutes 1868, c. 80, § 323, p. 692, repeated unchanged in General Statutes 1901, § 4771, p. 988, and repeated again in General Statutes 1905, § 5219, p. 1076, the rule in Kansas had uniformly been expressed thus:

"The following persons shall be incompetent to testify: * * * Third, husband and wife, for or against each other, *except* concerning transactions in which one acted as the agent of the other, or when they are joint parties and have joint interest in the action; but in no case shall either be permitted to testify concerning any communication made by one to the other during the marriage, whether called while that relation subsisted or afterwards."

Thus the law stood continuously from 1868 until the revision in 1909. During all this period the husband or wife were incompetent

witnesses for or against each other except in the particulars specified. The rule was a general condition of incompetency, subject to the exceptions mentioned; but in the revision of 1909 a change appeared. The Legislature dealt with the general subject of "competency of witnesses," and laid down a general rule, without making any exceptions, that husband and wife shall be incompetent to testify for or against each other "concerning any communication made by one to the other during the marriage, whether called while that relation subsisted or afterwards." This constituted the entire legislation on the subject.

Plaintiff in error, plaintiff below, contends that the Legislature, in adopting the revision of 1909, dealt exhaustively with the subject in question, and in effect declared husband and wife to be competent in every respect, except as to communications between them during the marriage state; while the defendant in error, defendant below, contends that the revision of 1909, by repealing the old statute making husband and wife incompetent witnesses *except* in the two particulars specified, in effect, repealed the provisions creating the exceptions to competency, and left the common-law rule of incompetency in full force and effect, and that as a result husband and wife are now utterly incompetent in the state of Kansas as witnesses for or against each other in every particular. This means that the relaxation of the common-law rule which for a long time had permitted husband and wife to testify for or against each other, at least in matters where they were jointly interested or in which one acted as agent for the other, had in the opinion of the Legislature been found to be a mistake, and that the Legislature intended by the last revision to correct the mistake, and, for the future, to subject husband and wife to the common-law total disability of being unable to testify at all for or against each other. We cannot think this was the legislative intent.

The Constitution of Kansas (art. 15, § 6) adopted in 1859, ordained as follows:

"The Legislature shall provide for the protection of the rights of women, in acquiring and possessing property, real, personal and mixed, separate and apart from the husband."

In compliance with this constitutional command, the Legislature, on March 20, 1868 (G. S. 1868, p. 562), enacted a law in effect that the property real and personal owned by a married woman at the time of her marriage, and any other property thereafterwards acquired by her, should be and become her sole and separate property notwithstanding her marriage; that she should be allowed, even while the marriage relation existed, to bargain, sell, and convey her real and personal property, and enter into any contract with reference to them, in the same manner, to the same extent, and with like effect as a married man could do with relation to his real and personal property; that she might carry on any trade or business or perform any labor or service on her sole and separate account and use and invest her earnings in her own name, and she was empowered to sue and be sued as if she were unmarried.

Such has remained the law governing her rights to the present day, and provisions to that effect similar to those found in the General

Statutes of 1868 have been carried forward into the several revisions of the statute made since then. Moreover, beginning with the Revision of 1868 and found in every subsequent revision there has been the following provision:

"The common law, as modified by constitutional and statutory law, judicial decisions, and *the condition and wants of the people*, shall remain in force in aid of the general statutes of this state; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of this state; but all such statutes shall be liberally construed to promote their object." G. S. 1868, § 3, p. 1127; G. S. 1901, § 8014; G. S. 1905, § 8746; G. S. 1909, § 9850.

By the constitutional provision and statutes just referred to, the common-law unity of husband and wife, and the dependence of the latter upon the former, in many respects have been abrogated, and the wife has stood in law a feme sole for many purposes. "The condition and wants of the people," as established by this legislation, to which the common law from the beginning was required to bend, would seem naturally and reasonably to incline the Legislature to enlarge rather than restrict the power of this new business woman, so that she might testify freely in the assertion of her own rights, whether against her husband or anybody else who might infringe them. Moreover, the injunction of the Legislature found in every revision of its laws requires the court to ignore the generally accepted rule that statutes in derogation of the common law should be strictly construed and to liberally construe them to promote their manifest purposes. This effectually does away with the argument of defendant's counsel, based on the general rule that repeals of the common law by implication are not favored and that statutes shall not be construed as changing the common law except so far as they expressly so declare.

We are, therefore, left untrammeled by any technical rules of construction, to ascertain as best we may the actual intent of the Legislature in enacting the provisions of the third paragraph of section 5915 of the Revision of 1909. Our duty is to see that they be "liberally construed to promote their object." The state of Kansas had nearly 50 years before this enactment largely emancipated the wife from her common-law incapacity to act as a feme sole; had endowed her with rights, privileges and powers unknown to the common law; had enabled her, for the protection of these rights and the exercise of these powers, to sue and be sued in the courts of the state as if she were unmarried. In addition to this the Legislature at an early day (G. S. 1868, p. 691) removed the common-law disqualification of all witnesses by reason of personal interest. Following these remedial provisions came the enactment that husband and wife should be incompetent to testify for or against each other *except* concerning transactions of agency one for the other or of joint interest of both; special emphasis being laid upon the incompetency to testify concerning intercommunications between them during the marriage state. From that early period until 1909 the law remained as just indicated, and married women continually testified for or against their husbands in all matters of agency or joint interest, but were never permitted to disclose communications made to each other during the marriage

state. If, now, the act of 1909 is to be construed as contended for by defendant's counsel, married women can no longer testify even concerning transactions of agency for or joint interest with their husbands. That time-honored privilege is taken away. Did the Legislature mean to do so?

Again, if counsel's contention is correct, why is the third paragraph of section 5915 inserted at all? On their theory, it serves no purpose whatever. At common law husband and wife were totally incompetent to testify for or against each other on any subject. This third paragraph, construed as defendant's counsel ask, makes no exception to this general rule of incompetency. It is nothing but a re-enactment of the common-law rule. All it says is that husband and wife shall be incompetent to testify as witnesses for or against each other *concerning communications,* etc. All that amounts to is a specification of one of the subjects as to which by the common law they were totally incompetent. If husband and wife are totally incompetent, of course they are incompetent to testify concerning communications passed between them during the marriage state. Accordingly, if counsel for defendant are right, the third paragraph is pure surplusage, and has no force or meaning whatsoever. This conclusion should not be reached, if any rational and effective interpretation can be given to it.

In view of the foregoing consequences of defendant's contention, we are constrained to hold them to be unsound. To sustain them would directly thwart the progressive and long-standing policy of the state in permitting husband and wife to testify for or against each other in matters of agency for each other, or in matters in which they had a joint interest, and would violate a cardinal principle of construction of statutes that force and effect should be given if possible to every act of the Legislature. Not only so, but we think the statutes in question, beginning with section 5911 and ending with section 5915 (Code Civ. Proc. §§ 317, 321), all indicate that the Legislature, in dealing with the general subject of "competency of witnesses," assumes as a general rule and as a premise that all persons were competent witnesses, but undertook to specify in the interests of public policy certain exceptions thereto:

(1) "Persons who are of unsound mind at the time of their production for examination;" (2) "Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly; * * * (4) An attorney, concerning any communications made to him by his client in that relation, or his advice thereon, without the client's consent;" (5) "A clergyman or priest, concerning any confession made to him" etc.; (6) "A physician or surgeon concerning any communication made to him," etc.

The persons thus far referred to are clearly exceptions to the general rule. The assumption was that all persons and all children and all attorneys and all clergymen and all physicians are competent witnesses; but the Legislature designated certain particulars with respect to which the rule of competency should not prevail. Now why is not the third exception, "Husband and wife, for or against each other, concerning any communication," etc., of the same kind? Why

does not the maxim "noscitur a sociis" apply, and require us to treat it the same as we treat the other five, namely, as exceptions to the general rule of competency so far, and so far only, as intercommunications are concerned. We think that is what the Legislature meant. It follows that the wife in this case was a competent witness for her husband for all matters excepting communications made by one to the other during the marriage state.

The judgment is accordingly reversed, and the cause remanded for a new trial.

