## JARRETT v. UNITED STATES.
### No. 8555.

Circuit Court of Appeals, Ninth Circuit.
Oct. 28, 1937.

Joe H. Kirby and Patrick F. Kirby, both of Los Angeles, Cal., for appellant.

Peirson M. Hall, U. S. Atty., and M. G. Gallaher and Howard V. Calverley, Asst. U. S. Attys., all of Los Angeles, Cal.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

Harry L. Jarrett, a special clerk in the Registry Section of the Customs Division of the United States Post Office at Los Angeles, was convicted of a violation of 18 U.S.C.A. § 318 which provides: "Whoever, being a postmaster or other person employed in any department of the Postal Service, shall unlawfully detain, delay, or open any letter * * * intrusted to him or which shall come into his possession, and which was intended to be conveyed by mail, or carried or delivered by any carrier, messenger, agent, or other person employed in any department of the Postal Service, or forwarded through or delivered from any post office or station thereof established by authority of the Postmaster General; * * * shall be fined not more than $500, or imprisoned not more than five years, or both."

Defendant opened a letter which came into his possession in his office and extracted therefrom a sum in currency. The only point at issue is made by his contention that the letter was not mail matter; that is, that it was not "intended to be conveyed by mail."

The letter was prepared by the postal authorities in Los Angeles as a decoy. It was addressed to a fictitious person in Hollywood. In it was placed $102 in currency. It was postmarked London and bore a canceled English stamp. There was placed on it a San Francisco stamp indicating receipt at San Francisco. The letter was then given to Assistant Superintendent Simpson of the registry division in Los Angeles, who placed the stamp of Los Angeles on it, indicating receipt there.

Simpson then took the letter to the "station section where the city mail is

handled" and placed it on the table "where mail is laid out."

An employee, Mr. Sheppard, then removed the letter from the table and crossed the room and placed the letter in a case with the "customs mail"—foreign mail to be examined by the customs officer. Sheppard then entered a record of the letter in the "recording book."

Some time later, at 11.45 o'clock in the morning, one Westman called to collect the customs mail for examination. He took the decoy letter with him and at that time it was still in its original condition. It was in the customs room that the defendant worked, and this was the sort of letter he was ordinarily called upon to handle. After Westman brought the customs mail in, he busied himself with other matters, went out to lunch, and returned at 12.30. The defendant was still there, and the letters to be examined had been placed on a table.

Just before 3.30 o'clock, p. m., the customs mail had all been examined, including the letter in evidence. It had been stamped "10¢ postage due," which is the customs inspection charge. Westman took it, together with the other mail, back to the registry division at 3.30. Shortly thereafter, a clerk in the registry division found it had been opened. The money was found on defendant.

It is therefore apparent that the defendant rifled the letter some time between 11.-45 a. m. and 3.30 p. m., and that he was handling it in the regular course of his duties.

The question is: Was this letter, which was addressed to a fictitious addressee, and falsely purporting to be mailed in England, and received in San Francisco and Los Angeles, a letter which was "intended to be conveyed by mail," within the meaning of the statute?

The answer should be in the affirmative. The letter was intended to be conveyed by mail. It was contemplated that it should go through the regular channels in the post office, from the registry room to the customs division and back again. This is as much conveyance by mail as the carrying of a letter from one city to another. The intent to have the letter conveyed by mail is none the less effective because the addressee and the purported point of origin are fictitious.

In Scott v. U. S., 172 U.S. 343, 350, 19 S.Ct. 209, 211, 43 L.Ed. 471, the postal inspectors placed a fictitious address on a letter inclosing currency, and dropped it in a street letter box. They intended to and did intercept it when it reached the post office, and found that the carrier had rifled it. The court said:

"In this case the letter was addressed although to a fictitious personage, yet to a post office within the territory of Arizona. It was properly stamped, and it was placed and came within the jurisdiction and authority of the post-office department by being dropped into a United States street letter box, in the city of New York. The duty of the defendant was, as above stated, precisely the same in regard to that as to any and all other letters that came into his possession from these various letter boxes. The intention to convey by mail is sufficiently proved, in such a case as this. * * *

"An intention to have the letter thus conveyed by the carrier is, within the statute, an intention to have it conveyed by mail. The difficulties of detecting this kind of crime are very great, and the statute ought not to be so construed as to substantially prevent a conviction under it. A decoy letter is not subject to the criticism frequently properly made in regard to other measures sometimes resorted to,—that it is placing temptation before a man and endeavoring to make him commit a crime. There is no temptation by a decoy letter. It is the same as all other letters to outward appearance, and the duty of the carrier who takes it is the same."

In accord with this case, and cited by it to sustain the conclusion there reached, are Montgomery v. U. S., 162 U.S. 410, 16 S.Ct. 797, 40 L.Ed. 1020, and Goode v. U. S., 159 U.S. 663, 671, 16 S.Ct. 136, 40 L.Ed. 297. Also in accord is McShann v. U. S. (C.C.A.8) 231 F. 923.

Affirmed.