UNITED STATES of America

v.

**David A. RUPERT.**

**Crim. No. 81–0009.**

United States District Court,
M. D. Pennsylvania.

March 24, 1981.

As Corrected June 19, 1981.

Frederick E. Martin, Asst. U. S. Atty., Lewisburg, Pa., for United States.

Clifford A. Rieders, Williamsport, Pa., for David A. Rupert.

## OPINION

MUIR, District Judge.

On January 15, 1981 a grand jury for the Middle District of Pennsylvania returned a two-count indictment charging Rupert, a Postal Service employee, with violations of 18 U.S.C. §§ 1709 and 1701. Rupert was

charged in Count I with theft and removal of $8.00 from a letter which had been entrusted to him and which was intended to be conveyed by mail and in Count II with willfully obstructing the passage of a letter by placing it in a waste receptacle.

On February 11, 1981, Rupert filed a motion pursuant to Fed.R.Crim.P. 12(b) to dismiss the indictment on the grounds that it fails to allege offenses. Rupert was given two extensions of time in which to file a brief in support of the motion and he did so on March 2, 1981. The Government filed an opposing brief on March 12, 1981. The motion became ripe for disposition on March 16, 1981 when Rupert filed a reply brief. For the following reasons, the motion to dismiss the indictment will be denied.

At the time the motion was filed, it was counsels' intention to submit to the Court a statement of agreed upon facts. Counsel, however, were not able to agree on such a submission. The Court, therefore, will treat this motion as it would treat the usual 12(b) motion and determine whether, based on the indictment, the Government's contentions of what it will prove and the facts the Defendant is willing to concede for the purposes of the motion the indictment states offenses against the United States.

The Government contends that on December 17, 1980, postal inspectors placed an envelope containing $8.00 addressed to a Ms. Sherri Dupont, 100 Carpenter Street, Muncy, Pennsylvania and bearing a third class bulk rate stamp and a return address in the "no value" section of the throwback case of the Muncy, Pennsylvania Post Office. The throwback case is the case where mail carriers place mail after they have examined it and found that it cannot be delivered on their routes. On December 17, 1980, it was Rupert's job to examine the mail in the throwback case and process it in accordance with Postal Service regulations.

The letter addressed to Ms. Dupont was a so-called "test letter" prepared by postal inspectors and designed to uncover theft by postal employees. According to the Government, it contained seven one dollar bills and two fifty cent pieces that were loose in the envelope. The name and address of the addressee on the letter were ficticious although the return address was that of a genuine third class bulk rate permittee. It is alleged that Rupert took the envelope from the throwback case, carried it to his work area, felt the envelope, opened the envelope, extracted the $8.00 and threw the then empty envelope into a waste receptacle.

Title 18 U.S.C. § 1709 makes a crime the theft or removal by a Postal Service employee of any item from any letter intended to be conveyed by mail. It is Rupert's position that the letter in question was not mail, that it was not intended to be conveyed by mail, and that he did not steal the $8.00. The Court will address each contention separately.

Rupert argues that the test letter was not mail because it did not fall within any of the categories of matter permitted to be mailed as third class bulk mail. Rupert has submitted in support of his motion excerpts from the Domestic Mail Manual (DMM). Section 621.1 defines third class mail as matter that is not mailed or required to be mailed as first class mail, not entered as second class mail, and weighing less than 16 ounces. Rupert has not, however, included with his motion those portions of the DMM that define first and second class mail; consequently, the Court cannot determine whether currency may properly be mailed third class. Rupert's citation to section 623 is not helpful because that section concerns special bulk rates and the Government does not contend that the purported sender of the matter sought to be qualified under that provision.

Even assuming, however, that Rupert is correct that the test letter was not proper third class mail, it does not follow that the letter was not mail within the meaning of § 1709 or that the theft or removal of its contents does not fall within the conduct proscribed by that section. It defies common sense to argue that a letter that on its face appears to be mail loses that status because the purported sender has not paid the proper postage. Rupert has cited no

case so holding and the Court declines to adopt such a reading of the statute.

Moreover, Rupert has not been charged with stealing or removing money from the mail but with theft and removal of money from a letter intended to be conveyed by mail, conduct also prohibited by § 1709. In *Goode v. United States*, 159 U.S. 663, 671, 16 S.Ct. 136, 138, 40 L.Ed. 297 (1895), the Supreme Court held that for the purposes of Rev.Stat. § 5467, the predecessor to § 1709, a letter "is a document, which bears the outward semblance of a genuine communication, and comes into the possession of the employee in the regular course of his official business.... [I]t is not for him to judge its genuineness." There can be no dispute that the envelope allegedly opened by Rupert was a letter under this definition of the term.

Rupert's argument that the letter was not intended to be conveyed by mail rests on two nineteenth century cases of Circuit Courts of Appeals and his interpretation of regulations governing third class bulk mail. *United States v. Rapp*, 30 F. 818 (C.C.N.D. Ga.1887), held that a dead letter decoy that was not received in the mail in the normal manner and was not intended to be delivered to anyone, was not "intended to be conveyed by mail" under Rev.Stat. § 5467. *United States v. Matthews*, 35 F. 890 (C.C. D.Md.1888), held that it was for the jury to determine if the mailer had the subjective intent that the letter be conveyed by mail. It appears to be Rupert's position that since the letter was placed in the throwback case with the intention that it be taken and appropriated by a postal employee the Court must conclude that there was no intent to convey the letter by mail.

Although the Court of Appeals for the Third Circuit has not addressed this contention, it has been rejected by at least three other Courts of Appeals. *United States v. Rodriguez*, 613 F.2d 28, 31 (2d Cir.) (per curiam), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980); *United States v. Hergenrader*, 529 F.2d 83, 85 (8th Cir.), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2632, 49 L.Ed.2d 377 (1976); *United States*

*v. Kent*, 449 F.2d 751, 752 (5th Cir. 1971), *cert. denied*, 405 U.S. 994, 92 S.Ct. 1268, 31 L.Ed.2d 462 (1972). Rupert has called no 20th century case that follows *Rapp* or *Matthews* to the Court's attention. In determining whether the matter was intended to be conveyed by mail, the modern approach is to apply an objective standard. The subjective intent of the person who prepared the letter is not relevant; rather, an item was intended to be conveyed by mail if a reasonable person who saw the letter would think it was a letter that was intended to be delivered. "It is the appearance which it carries to the postal employee which is crucial." *United States v. Hergenrader*, 529 F.2d at 85 (8th Cir. 1976).

In *Hergenrader* the Court of Appeals for the Eighth Circuit upheld a conviction under § 1709 when a test letter placed in the trash was removed by a custodian who extracted $6.00 from it. The Court relied in part on *Scott v. United States*, 172 U.S. 343, 19 S.Ct. 209, 43 L.Ed. 471 (1899), which held that a decoy letter placed in a collection box and addressed to a ficticious addressee was matter intended to be conveyed by mail. The Court of Appeals also reasoned that a stamped and sealed letter found in an area where mail was being processed would appear to a reasonable employee to be matter intended to be conveyed by mail. In *Kent* and *Rodriguez*, the decoy matter was not deposited in a mailbox but placed at a location in a post office that was normally used in the sorting or distribution of mail. In this case it is for the jury to determine whether a reasonable postal employee in Rupert's position would believe the test letter was intended to be conveyed by mail. The Court reads nothing in *Scott* that indicates that in order to support a conviction under § 1709 a letter must be placed in a mailbox rather than some other location in the mail handling system. This Court joins the Courts of Appeals for the Second, Fifth and Eighth Circuits in rejecting the reasoning of *Rapp* and *Matthews*, and adopts an objective test for determining if the letter was intended to be conveyed by mail and concludes that the test letter need not have

been placed in a collection box but only have been placed in any part of the mail handling process.

▌ This is not a case in which a test letter was placed on a sidewalk outside a post office and found by a postal employee who then took the contents of the letter. In this case, it is alleged that the test letter was placed in the normal work flow of the post office, removed by Rupert, taken to his duty station and in the course of performing his duties Rupert took the contents of the letter. Under the objective standard of "intended to be conveyed" the Court concludes that the indictment sets forth an offense against the United States.

Rupert's second argument on the conveyance point is that based on certain postal regulations, a reasonable employee in Rupert's position would have believed that the test letter should have been treated as waste and for that reason was not matter intended to be conveyed by mail.

Section 159.15 of the DMM provides that mail that is undeliverable as addressed may be forwarded, returned to sender, or treated as dead mail, depending on the class of mail. According to exhibit 159.151 of the DMM, the proper treatment of the test letter, since it contained no notation indicating that forwarding and return postage were guaranteed, was to treat the mail as waste unless it was of obvious value in which case it was to be returned to the apparent sender at the applicable rate.

Section 159.231 states that a sender of third class mail may identify pieces that are considered to be of obvious value by marking the wrapper with either "return postage guaranteed" or "forwarding and return postage guaranteed." Section 159.232 provides that if an undeliverable piece of mail is not so marked "its value will be appraised before it is disposed of." The section then lists some examples of matter having obvious value and states that miscellaneous printed matter such as circulars and unsolicited articles such as samples of merchandise are examples of matter that are not of obvious value.

It is the Government's position that it was Rupert's job to determine if the test letter was of obvious value. It further argues that Rupert felt the two half dollar coins and at that point should have concluded the test letter was of obvious value. Even if Rupert was not sure at that time if the letter was of obvious value, the Government argues he most certainly was of that opinion after he opened the letter and found $8.00.

Rupert argues that because currency is not listed as an example of a matter of obvious value, it is an item of no obvious value. This contention is without merit. In the first place, it is clear that despite galloping inflation $8.00 is still obviously of value. Secondly, the listing of examples in section 159.232 does not purport to be exclusive. If Rupert wishes to base a defense to the jury on a contention that $8.00 is of no obvious value, he may attempt to do so. The Court, however, will not rule as a matter of law that a reasonable employee in Rupert's position would conclude that the test letter was of no obvious value. The Government, therefore, is entitled to prove that a reasonable employee would know that the letter was of obvious value and therefore was intended to be returned by mail to the apparent sender at the applicable rate as required by Exhibit 159.151 of the DMM.

Rupert's final argument with respect to Count I is that under applicable postal regulations he was entitled to possess the $8.00 and therefore at most he embezzled the money rather than stole it and for that reason Count I must be dismissed. Rupert argues under DMM § 159.42 it was Rupert's obligation to remove the money and promptly turn it over to his supervisor. That section, however, deals with money found loose in the mail. In this case it is alleged that the $8.00 was inside the envelope and hence cannot be said to have been loose in the mail. For this reason Rupert must search elsewhere to find support for this theory as to why Count I must be dismissed.

Although § 1709 prohibits both embezzlement of any letter or anything contained in a letter by a postal service employee as well as the theft or removal of anything from a letter intended to be conveyed, the indictment charges Rupert with theft and removal of the $8.00. It appears from the Government's brief and exhibits that it was part of Rupert's duties to possess the envelope in order to make a determination of how it should be processed. Although the matter is not free from doubt, it appears to the Court that if Rupert had lawful possession of the envelope he also had lawful possession of the contents of the envelope. *United States v. Hergenrader*, 529 F.2d 83 (8th Cir.), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2632, 49 L.Ed.2d 377 (1976) is not persuasive authority to the contrary. Although in that case it could be argued that the defendant had lawful possession of the envelope in that he came across it during his duties as a custodian, it does not appear that the defendant in that case raised the point asserted by Rupert here. *Rodriguez* involved charges of embezzlement of articles contained in mail matter by a postal employee who had lawful possession of the mail from which the item was taken. The Court, therefore, agrees with Rupert that if he had lawful possession of the test letter he cannot be convicted of theft of the contents of the envelope. *See United States v. Trevino*, 491 F.2d 74, 75 (5th Cir. 1974).

As indicated above, § 1709 prohibits the theft or removal by a postal employee of any article from any letter intended to be conveyed by mail. The Government, therefore, properly charged Rupert with theft and removal of the $8.00. In order to obtain a conviction, however, the Government must prove that Rupert committed a theft or removed the $8.00 from the letter. *See United States v. Niederberger*, 580 F.2d 63, 68 (3d Cir.), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978). It is the Government's position that even if Rupert was authorized to open the letter to determine whether it was of value, he was not authorized to remove the contents. Since the Government does not concede that Rupert was authorized to remove the contents

of the envelope and since unauthorized removal of the contents is a violation of § 1709, the Court will not dismiss Count I.

■ Title 18 U.S.C. § 1701 prohibits anyone from knowingly obstructing or retarding the passage of the mail. Rupert argues that he could not obstruct or retard the mail because he was authorized to open the letter and that there was no passage of mail because the letter never entered the "stream of postal administration." Rupert also contends that he did not willfully or knowingly do an illegal' act because he was obligated to act with respect to the envelope in the manner in which he acted.

Rupert's contentions with respect to Count II are without merit. As indicated above, even if Rupert could lawfully open the letter, once he discovered that it contained $8.00 he was obligated under postal regulations either to turn the letter and its contents over to a supervisor or return it himself to the sender. Throwing the envelope into the waste receptacle was clearly obstruction. In addition, since the letter was at the time it was allegedly purloined by Rupert in the normal work flow of the post office and would have continued in that flow had Rupert acted properly, Rupert's obstruction was with the passage of mail. Rupert reads *United States v. Lavin*, 567 F.2d 579 (3d Cir. 1977) too narrowly when he argues that the "passage of the mail" ended when the letter could not be delivered; rather, the letter was in the "passage of the mail" until it was returned to the apparent sender. Finally, it is for the jury to decide whether Rupert did the acts willfully and knowingly.

Based on the foregoing, the Court concludes that the indictment alleges offenses against the United States and is not subject to dismissal for the reasons urged by Rupert.